(December 27, 1910.)

## HOME LAND COMPANY, Respondent, v. J. E. OSBORN, Respondent, and BANK OF NEZ PERCE, Appellant.

[112 Pac. 764.]

PROMISSORY NOTE—SALE AND TRANSFER—ACTION BY HOLDER—BREACH OF NOTE.

(Syllabus by the court.)

1.  Where bank N. transmits a promissory note owned by it to bank E. and guarantees the payment thereof, and bank E. thereupon pays to bank N. the face value of such note, with the further agreement that the transferee shall receive eight per cent interest on the same and that bank N. shall receive the difference between eight per cent and the rate of interest which the note bears, and when instalments of interest fall due, bank E. charges the same to bank N. and draws for the amount, and bank N. responds by paying the same and collects from the maker of the note, and thereafter and prior to the payment of the principal bank E. sells and transfers the note to H. & Co.; *held,* that the title to the note had passed to bank E., and that it had a right to sell and transfer the note, and that the holder thereof may maintain its action for the collection of the same.

2.  Under the provisions of secs. 3508 and 3648, Rev. Codes, the person in possession of a negotiable promissory note is presumed to be the owner and holder thereof, and may sue thereon.

3.   The facts in this case examined and *held* to show the defendant and appellant entitled to a credit of $400 more than was allowed by the jury.

APPEAL from the District Court of the Second Judicial District, in and for Nez Perce County.   Hon. Edgar C. Steele, Judge.

Action by indorsee against maker and guarantor on a promissory note.   Judgment for plaintiff and defendant guarantor appealed.   *Modified and affirmed.*

Eugene O'Neill, for Appellant.

The process that this note went through and the operation of rediscounting a note as testified to by the witnesses make the transaction between the First National Bank of Nez Perce and Effingham State Bank a pledge.   (31 Cyc. 785, 786; 2 Kent, Commentaries, star p. 577; Jones on Bailments, 117; *Brewster v. Hartley,* 37 Cal. 15, 99 Am. Dec. 237.)

The California statute on the subject of pledge is the same as ours, sec. 3410.   (*Wright v. Ross,* 36 Cal. 414, 428; *Dewey v. Bowman,* 8 Cal. 151; *Brewster v. Hartley, supra.*)

The general property in the pledge remains in the pledgor, in this case the First National Bank of Nez Perce; the special property (the lien or pledge) in the pledgee.   Then the pledgee Bank of Effingham would not have the ownership or title in it to transfer to plaintiff.   (*Haber v. Brown,* 101 Cal. 445, 452, 35 Pac. 1035; *Wheeler v. Newbould,* 16 N. Y. 398; *Hawks v. Hinchcliff,* 17 Barb. 492; 2 Kent's Com., star p. 581.)

The pledgee cannot sell choses in action such as notes, drafts and other evidences of indebtedness, but must hold and collect them as they become due.   (*Handy v. Sibley,* 46 Ohio St. 9, 17 N. E. 329; *Fletcher v. Dickinson,* 7 Allen (Mass.), 23; *Nelson v. Wellington,* 5 Bosw. (N. Y.) 178; *Brown v. Ward,* 3 Duer (N. Y.), 660; *Banking Co. v. Lewis,* 12 N. J. Eq. 323; *Steele Co. v. Brick Co.,* 82 Ill. 548, 25 Am. Rep. 431; *Zimpleman v. Veeder,* 98 Ill. 613.)

The mere holder of a bill or note, who has no interest in it, is clearly not the real party in interest, and cannot in the code states maintain an action as such upon it. (*United State v. Shoup,* 2 Ida. 493, (459) ; *Parker v. Totten,* 10 How. Pr. (N. Y.) 233; *Clark v. Phillips,* 21 How. Pr. (N. Y.) 87.)

The plaintiff would not be the real party in interest and would have no right whatever to sue in this case. (Norton, Bills and Notes, p. 214; *United States v. Shoup,* 2 Ida. 493, 498, (459) ; *Holton v. Sandpoint Lumber Co.,* 7 Ida. 573, 64 Pac. 889.)

Chas. L. McDonald, for Respondent.

A transfer by delivery will amount to an indorsement if it is accompanied with a promise to refund the amount received if the note is dishonored.   (7 Cyc. 829, 830, note 62.)

In effect this transaction amounts to a loan by the bank at which the note is rediscounted to the bank rediscounting the same, the note being delivered to the bank rediscounting it as an evidence of the indebtedness and in the nature of collateral security for the loan.

A pledgee or his personal representative may assign his interest under the contract whether the principal debt is negotiable or not without first demanding payment of the pledgor or notifying him that the assignment is to be made ; and the assignee will acquire in all respects the same rights to which the pledgee was entitled.   Such assignment is effected by delivery of the collateral to the assignee and no formal assignment is necessary.   (31 Cyc. 848, 849; *Drake v. Cloonan,* 99 Mich. 121, 41 Am. St. 586, 57 N. W. 1098; Jones on Pledges, sec. 418; *Williams v. Ashe,* 111 Cal. 180, 43 Pac. 595,)

There is a substantial conflict in the evidence, in which event the verdict of the jury will not be disturbed.   (*Western Moline Plow Co. v. Caldwell,* 18 Ida. 463, 110 Pac. 533.)

### STATEMENT OF FACTS.

This is an action upon a promissory note instituted by the respondent as the holder thereof against the defendants,

J. E. Osborn as the maker and the Bank of Nez Perce as guarantor. The note was executed and delivered by Osborn for the sum of $2,500, payable to the order of J. A. Schultz. Schultz assigned and transferred the note to the First National Bank of Nez Perce. The bank thereafter discounted, or as stated in the pleadings and by the witnesses "rediscounted," the note to the Effingham State Bank of Effingham, Illinois. This transaction, according to the evidence, occurred as follows: The First National Bank of Nez Perce had an arrangement with the Effingham State Bank whereby it sent promissory notes to the latter bank and guaranteed the payment of the same, and thereupon received from the Effingham bank the face value of the notes. It was further understood that where a note bore interest at twelve per cent, the Effingham bank should receive eight per cent and the difference should go to the First National Bank of Nez Perce; and where a note bore ten per cent, the Effingham bank should receive seven per cent and the difference should go to the Nez Perce bank. This note was held by the Effingham bank for some time, and as interest would fall due it was charged up to the First National Bank of Nez Perce, and the latter bank would charge itself with the amount of interest and credit the Effingham bank accordingly. In the meanwhile it collected from the maker of the note either eight or twelve hundred dollars. As to which sum it collected, there is at least an apparent conflict in the evidence. Prior to the maturity of this note the First National Bank of Nez Perce surrendered its charter, but prior to doing so the Bank of Nez Perce was organized under the state law as a state banking institution, and took over all the assets of the First National Bank and agreed to assume all the liabilities of the First National Bank, which included its guaranty on this note. About that time, or soon thereafter, the Effingham bank sold, assigned and transferred the note to the plaintiff herein, Home Land Co. This action was thereafter instituted against the Bank of Nez Perce on its guaranty, and Osborn, the maker of the note, for the collection thereof. No service of process was had on the defend-

ant Osborn, and the action proceeded against the bank alone. Judgment was entered in favor of the plaintiff, and the bank appealed.

AILSHIE, J. (After stating the facts.)—A great number of errors have been assigned on the admission and rejection of evidence and the giving of certain instructions by the court and the refusing to give others, but they all revolve about the leading and decisive question presented by appellant to the effect that the note sued on was merely a pledge in the hands of the Effingham bank, and that the title to the same never passed to the bank and that the bank was unable to pass title to the respondent in this case. If that question should be resolved against the contention of appellant, the other assignments of error can prove of no avail. The Effingham bank took the paper and paid the face value thereof. The transaction was not accompanied by any pledge agreement. The assignor and holder of the paper, the First National Bank of Nez Perce, guaranteed the payment of the note. The collections of interest were made through the First National Bank of Nez Perce. In other words, the Effingham bank did not call directly on the maker of the note for interest, and presumably did not expect to call directly on the maker for the principal when due, but it called on the guarantor, the First National Bank of Nez Perce, which responded in the payment of interest as the same fell due, and it accordingly called on the maker for the same. The guarantor therefore performed the duties of a collecting agent, solely for the protection of its guaranty on the paper and a profit of four per cent interest, which represented the difference between the rate the note bore and the rate the Effingham bank was to accept.

These facts, however, did not reduce this transaction, involving negotiable commercial paper, to the mere condition of a pledge. In applying the law governing pledges of goods and chattéls to that of negotiable paper, some distinctions must be observed in the matter of presumptions growing out of the transactions. A deposit of the ordinary

personal property as collateral for the payment of a loan carries with it certain presumptions which would not arise on the transfer of commercial paper where the face value thereof is paid for the same. In other words, in the absence of a specific agreement or understanding that it should be a pledge, the law of negotiable instruments raises the presumption that title has passed, and that the holder thereof is the owner and entitled, to maintain his action thereon for the recovery thereof. (See secs. 3508 and 3648, Rev. Codes; *Craig v. Palo Alto Stock Farm,* 16 Ida. 701, 102 Pac. 393.)

Under the facts as disclosed by the record in this case, it is clear to us that the bank of Effingham took title to the note sued upon, and was entitled to maintain its action thereon for the collection of the same. It had a right to sell and transfer the paper to the respondent. We find no error of law which would either call for or justify a reversal of the judgment in this case.

One question of fact, however, would seem to require a modification of the judgment. It is contended by appellant that $1,200 had been paid on the note, while the respondent claims that only eight hundred was paid, and the jury allowed only $300 on interest. The indorsements on the note as pleaded are as follows: ''Interest paid to March 4, 1907; interest paid to March 4, 1909.'' The note bears date March 4, 1905, and bears interest at the rate of twelve per cent per annum. The cashier of the Bank of Nez Perce testified that the bank books showed under date of March 2, 1908, a deposit in favor of the Effingham State Bank of $800 received from Osborn. He further testified that the books showed that in January, 1909, ''there was charged to the account of the Effingham State Bank on account of Osborn $400.'' The witness further says: ''The record shows that there was $400 deposited for the benefit of the Effingham State Bank. . . . . The record shows that Effingham for Osborn got $400 for interest about that time.'' The record is somewhat confusing as to the date. At one place it states January 18th and at another place January 6, 1909. The witnesses seem to adhere substantially to these statements, but on cross-examina-

tion there is some confusion introduced into the record which evidently had the tendency to lead the jury to conclude that only $800 had been paid on the note. As we read the record, however, we do not find any substantial dispute or denial of the proposition that $1,200 was received on account of this note.

We have concluded to order a *conditional modification* of the judgment by reducing it in the sum of $400, *provided* the plaintiff herein within thirty days after the going down of the *remittitur* file a waiver of that sum and an acceptance of the judgment reduced in the sum of $400. Upon failure to do so, a new trial will be granted. Judgment modified as above stated. The total costs of printing the transcript, brief of respondent, and forty pages of appellant's brief, and the other taxable costs in the case, will be divided equally between the appellant and respondent.

Sullivan, C. J., concurs.